[No. 29133. Department Two. October 22, 1943.]

C. H. WHITE *et al., Respondents,* v. DITLER BERG *et al., Defendants,* H. M. SAULSBERRY *et al., Appellants.*[1]

*H. E. Foster,* for appellants.

*Allen, Hilen, Froude & De Garmo,* for respondents.

MALLERY, J.—This is an action by plaintiffs, C. H. White and wife, to restrain the defendants, Ditler Berg and wife and H. M. Saulsberry and wife, from interfering with plaintiffs' right to take water from a community water system. From a decree in favor of plaintiffs, the defendants Saulsberry appeal.

Prior to 1931, appellants were the owners of blocks 52 and 57, Bryn Mawr plat, which are situated between the city of Seattle and city of Renton, high above Lake Washington. They are not served by the water system of the city of Seattle, Bryn Mawr, or any other water district. In order to more effectually sell these lots, appellants, with the aid of one Pollard, constructed and installed a gravity water

[1] Reported in 142 P. (2d) 260.

system for the purpose of supplying water to the purchasers of the lots in these two blocks. This water system consisted of the intake from springs higher up the hill, pipes leading therefrom into a storage tank upon the higher portion of block 57, a water main from this tank leading in a northerly direction to and across south 123rd street (which separated blocks 52 and 57), and after crossing the street the water main continued in a easterly direction. From this system, the water was supplied to the purchasers of the lots sold by appellants, and was then extended in a southerly and easterly direction across south 123rd street, so as to supply water to the lots in the lower or eastern portion of block 57.

In October, 1931, appellants entered into a contract to sell two of these building tracts to respondents, C. H. White and wife, and thereafter conveyed these lots to respondents. At the time of the sale to respondents, the water system had been completely installed and was visible upon the property.

Prior to the sale to respondents and while appellant H. M. Saulsberry was showing the property to the respondents, in order to induce them to purchase it, he explained to respondents the existence of the water system and advised respondents that water for the property might be obtained from the existing system.

At the time of the sale of these two building tracts, the water from this community water system adjacent to block 57 had not been piped onto the property in question, but it was available for use, immediately adjoining the property, just as soon as the building was erected thereon, and water was needed for use therein.

When respondents were ready to connect with the water system, they inquired of appellant H. M. Saulsberry as to the place where they should "hook on," and, in response to their inquiry, appellant H. M. Saulsberry forwarded to respondents a rough sketch of blocks 52 and 57, showing the location of the water tank and water mains leading therefrom and suggested places for tapping the line.

The defendants Berg had already made a connection with the existing water system, and, by mutual consent between the respondents and defendants Berg and with the approval of appellants, respondents arranged to connect onto the community water system in south 123rd street not far from Berg's property. A new pipeline was then laid from this point of connection with the community water system in south 123rd street in an easterly and southeasterly direction across south 123rd street, thence upon block 57 to the Berg house and thence to the residence of the respondents.

During the period of nearly six years that respondents were using this community water system along with the other residents in blocks 52 and 57, it became necessary to make repairs and replacements. Respondents as one of the users of the water from this community water system bore their share of the expense of operating and maintaining the community water system.

On May 4, 1942, "when some question came up about the driveway," defendant Berg cut the pipeline serving respondents' property at a point between Berg's land and respondents' land. It then became necessary for respondent to connect with the community water system without crossing Berg's land. Respondents then obtained a franchise from King county permitting them to lay pipes on 84th avenue south, which lies to the east of block 57 and upon south 123rd street which lies to the west of block 57. Under this franchise, respondents laid their pipes around the Berg tract and again connected with the community water system, in south 123rd street, not far from the water tank. Appellant H. M. Saulsberry then severed the pipes laid by respondents. Thereafter respondents connected with the water system in south 123rd street not far from the Berg property. This connection was made upon that portion of the pipe in south 123rd street which respondents had supplied and laid in 1936. This connection was then cut by the defendant Berg. Respondent reconnected it and brought this action to enjoin the defendants Berg and appellants from interfering with their water supply.

The water tank originally was built upon a lot owned by the Saulsberrys but subsequently sold to another party. The Saulsberrys still own property served by the water system.

Appellants' assignments of error are that the court erred in receiving evidence to support the allegations of the complaint and in granting the prayer of the complaint.

We quote appellants' contentions from their brief:

"There is no contention in the complaint that in the purchase of this property from the appellants by the respondents that respondents obtained a contract running with the land as a part of the consideration. There are no personal covenants in the complaint nor under the evidence. A permissive right may be revoked at any time. For six long years, respondents made no effort to comply with appellant's suggestion, but attached to the Berg line.

"It is certainly not a ground for injunctive relief that the respondents' property is a mile away from the city water system and it is not contiguous to the Bryn Mawr water system and supplies cannot be had for the construction of a well, that the appellants should be enjoined and restrained from prohibiting the respondents from absorbing their private water system. The inconvenience that the respondents may be put to is certainly not a ground for injunctive relief. The fact that respondents and their neighbor, the defendants Berg, could no longer agree about sharing water is certainly not sufficient grounds for injunctive relief enjoining the appellants from interfering with something that the evidence fails to disclose he interfered with."

The trial court held that the respondents had an implied easement and permanently enjoined the appellants from interference therewith.

Upon the question of implied easements, this court has said:

"Easements by implication arise where property has been held in a unified title, and during such time an open and notorious servitude has apparently been impressed upon one part of the estate in favor of another part, and such servitude, at the time that the unity of title has been dissolved by a division of the property or a severance of the

title, has been in use and is reasonably necessary for the fair enjoyment of the portion benefited by such use. The rule, then, is, that upon such severance, there arises, by implication of law, a grant of the right to continue such use." *Bailey v. Hennessey,* 112 Wash. 45, 191 P. 863; *Rogers v. Cation,* 9 Wn. (2d) 369, 115 P. (2d) 702.

And in *Berlin v. Robbins,* 180 Wash. 176, 38 P. (2d) 1047, we said that the three essential characteristics of an easement by implication are:

" . . . (1) unity of title and subsequent separation by a grant of the dominant tenement, (2) apparent and continuous user, and (3) the easement must be necessary to the proper or reasonable enjoyment of the dominant tenement."

Have these three requirements been met in the present case?

Appellants, during the time they owned both the dominant and servient estates, built the water system for the purpose of serving the dominant estate. They sold the dominant estate to the respondents, who built their house, after severance of the title and before using the water for household uses. Respondents started using the water while, the servient estate was still owned by appellant. This would be the natural sequence of events with regard to all of the lots sold by appellants. The availability of the water system for use on the dominant estates and actual use of water on the dominant estates are, of course, not the same identical thing. We hold, nevertheless, that appellant is estopped from asserting any difference between them. Having provided the water system and sold the property, otherwise materially less useful, on the representation\ of the availability of the water, appellants may not now, six years later, defeat respondents' easement for the sole reason that they, themselves, did not use the water on the particular dominant estate of respondents prior to the severance of the title. They installed the water system to serve the particular lot in question, along with others. It was ready for use and they could have used it. They are estopped from asserting

that they did not use that which they represented to respondents was there for use.

The decree is affirmed.

SIMPSON, C. J., MILLARD, ROBINSON, and BLAKE, JJ., concur.