[No. 37283   Department One.   July 22, 1965.]

OTTO HELLBERG *et al., Respondents,* v. COFFIN SHEEP COM-
PANY *et al., Appellants.**

*Splawn & Bounds,* for appellants.

*Loney, Westland, Koontz & Raekes,* by *Philip M. Raekes,*
for respondents.

HILL, J.—We shall refer to the plaintiffs in this action as
Hellberg and the defendants as Coffin.

*Reported in 404 P.2d 770.

Hellberg leased some 3,000 acres from Coffin for a 10-year period, commencing January 1, 1958, and ending December 31, 1967; and, in addition, Coffin agreed to sell and Hellberg agreed to buy the property at the end of the lease period. This we will refer to as the Hellberg property. It is located in the southern part of Benton County in the Horseheaven Country, its southern boundary being the Columbia River. It is landlocked by the property of others (primarily, if not entirely, that of Coffin), except for a well defined road to which we will refer as the "old Coffin road" which connects the Hellberg land with Primary State Highway No. 8 (referred to herein as PSH 8). Its connection with PSH 8 is at the Coffin headquarters, and from that point it runs southeasterly (southerly about 2 miles and easterly 3 miles) traversing parts of five sections, all belonging to or controlled by Coffin, until it reaches the Hellberg property; it then continues south through that property to the Columbia River (roughly 3 miles).

The present litigation stems from Coffin padlocking a gate across the old Coffin road at its intersection with PSH 8. Hellberg brought this action to restrain any interference with the use of the old Coffin road and to have it declared a public road. Coffin contends there is another access road, but the evidence sustains the trial court's finding that there is no other practicable road which would give Hellberg access to PSH 8 or to any other practicable road out of the Horseheaven Country.

The trial court enjoined any interference with Hellberg's right to ingress and egress over the old Coffin road and upheld that right on several different legal theories.

The trial court found that the old Coffin road was a public highway because it had been used as such for 10 years,[1] and because it had been worked and kept up at public expense for seven years.[2]

[1] "Highways used ten years are county roads. All public highways in this state, outside incorporated cities and towns and not designated as state highways which have been used as public highways for a period of not less than ten years are county roads: . . . ." RCW 36.75.080

[2] "Highways worked seven years are county roads. All public high-

The trial court also found that Hellberg had an easement of necessity over that road and also an implied easement over it as an appurtenance to the lands leased to him by the defendants.

We are satisfied from the record that Hellberg is entitled to access to his property over the old Coffin road, either on the basis of a way of necessity or on the basis of an implied easement appurtenant to the land; hence, we see no necessity of discussing the other reasons given by the trial court for enjoining the interference with that access by Coffin. We entertain substantial doubt as to whether the use by the public of the old Coffin road was other than permissive. In the absence of some claim of interest on behalf of the public and because of the marked disinterestedness on the part of Benton County, we see no reason to impose any greater burden on the Coffin land than that necessary to give Hellberg the relief to which he is entitled.

A determination of whether the old Coffin Road from its intersection with PSH 8 to the Columbia River (not only through the Coffin land but through that of Hellberg as well) is a public highway, may well await some interest on the part of the public not now apparent. Only the Hellbergs are seeking the right to use that road in the present litigation, and that can be secured for them on the trial court's holding that they had an easement of necessity, or that they had an implied easement appurtenant to the land, both of which are based on substantial evidence. Both easements arise by implication, but to avoid confusion we shall not refer to the easement of necessity as an implied easement.

■ An easement of necessity is an expression of a public policy that will not permit property to be landlocked and rendered useless. In furtherance of that public policy, we give the owner, or one entitled to the beneficial use of

ways in this state, outside incorporated cities and towns and not designated as state highways, which have been used as public highways for a period of not less than seven years, where they have been worked and kept up at the expense of the public, are county roads." RCW 36.75.070

landlocked property, the right to condemn a private way of necessity for ingress and egress. RCW 8.24.010.

■ Condemnation, however, is not necessary where the private way of necessity is over the land of the grantor or lessor of the landlocked property.

The theory of the common law is that where land is sold (or leased) that has no outlet, the vendor (or lessor) by implication of law grants ingress and egress over the parcel to which he retains ownership, enabling the purchaser (or lessee) to have access to his property. *State ex rel. Mountain Timber Co. v. Superior Court,* 77 Wash. 585, 588, 137 Pac. 994 (1914).

Under the findings of the trial court, Hellberg has no access from his leased land to any highway except over the land of Coffin, the lessor, by way of the old Coffin road. The right of the landlocked tenant to ingress and egress over his lessor's property cannot be gainsaid.

Concerning easements by implication as appurtenances to land, this court has said *(Bailey v. Hennessey,* 112 Wash. 45, 48, 191 Pac. 863 (1920)):

> Easements by implication arise where property has been held in a unified title, and during such time an open and notorious servitude has apparently been impressed upon one part of the estate in favor of another part, and such servitude, at the time that the unity of title has been dissolved by a division of the property or a severance of the title, has been in use and is reasonably necessary for the fair enjoyment of the portion benefited by such use. The rule, then, is, that upon such severance, there arises, by implication of law, a grant of the right to continue such use.

The foregoing quotation was reiterated in *Rogers v. Cation,* 9 Wn.2d 369, 115 P.2d 702 (1941); *White v. Berg,* 19 Wn.2d 284, 142 P.2d 260 (1943), and *Evich v. Kovacevich,* 33 Wn.2d 151, 156, 204 P.2d 839 (1949). In the latter case we said:

> The essentials to the creation of an easement by implication are, as variously stated by this court, the following: (1) a former unity of title, during which time the right of permanent user was, by obvious and manifest

use, impressed upon one part of the estate in favor of another part; (2) a separation by a grant of the dominant tenement; and (3) a reasonable necessity for the easement in order to secure and maintain the quiet enjoyment of the dominant estate. *Bailey v. Hennessey, supra; Berline v. Robbins,* 180 Wash. 176, 38 P. (2d) 1047; *Hubbard v. Grandquist,* 191 Wash. 442, 71 P. (2d) 410;

. . . .

And in *Adams v. Cullen,* 44 Wn.2d 502, 505, 268 P.2d 451 (1954), we said:

An implied easement (either by grant or reservation) may arise (1) when there has been unity of title and subsequent separation; (2) when there has been an apparent and continuous quasi easement existing for the benefit of one part of the estate to the detriment of the other during the unity of title; and (3) when there is a certain degree of necessity (which we will discuss later) that the quasi easement exist after severance.

Unity of title and subsequent separation is an absolute requirement. The second and third characteristics are aids to construction in determining the cardinal consideration—the presumed intention of the parties as disclosed by the extent and character of the user, the nature of the property, and the relation of the separated parts to each other. 3 Tiffany, Real Property (3d ed.), 253, 254, § 780; *Bailey v. Hennessey,* 112 Wash. 45, 191 Pac. 863 (1920). In *Rogers v. Cation,* 9 Wn. (2d) 369, 376, 115 P. (2d) 702 (1941), we pointed out that the rule is not a hard and fast one, and that the presence or absence of either or both of these requirements is not necessarily conclusive.

We are concerned in such cases with the presumed intention of the parties as disclosed by the extent and character of the user, the nature of the property, and the relation of the separated parts to each other. *Evich v. Kovacevich, supra; Rogers v. Cation, supra;* 3 Tiffany, Real Property § 780, at 253, 254 (3d ed. 1939); 17A Am. Jur. *Easements* § 33 (1957).

We have here the former unity of title in Coffin, the separation by the lease of the 3,000 acres to Hellberg, and the quasi easement of the old Coffin road over the Coffin land which furnishes the only practicable ingress and egress

to the leased premises. Coffin, however, contends (if the implied easement applies to leases) that the evidence is insufficient to warrant a finding that this easement is reasonably necessary to the quiet enjoyment of the leased property.

The evidence fully substantiates the trial court's finding that there is no exit from land held by Hellberg and no road available other than the road in question (the old Coffin road) for convenient service to the areas leased by Coffin to Hellberg.

The findings of the trial court leave no question as to the reasonable necessity for the use of the old Coffin road by Hellberg.

■ However, Coffin takes the position that there can be no implied easement because there has been no severance of title, and Hellberg is only a tenant. Hellberg is, at the moment, only a tenant and, by the same token, Coffin is his landlord. Rights and easements do pass to lessees by implication. *Andrews v. McCutcheon,* 17 Wn.2d 340, 135 P.2d 459 (1943). See also *Sierad v. Lilly,* 204 Cal. App. 2d 770, 22 Cal. Rptr. 580 (1962); *Ng v. Warren,* 79 Cal. App. 2d 54, 179 P.2d 41 (1947); *Lebel v. Backman,* 342 Mass. 759, 175 N.E.2d 362 (1961); *Weigand v. American Stores Co.,* 346 Pa. 253, 29 A.2d 484 (1943). The landlord-tenant relationship probably has produced more law relating to implied easements than any other. See Annotations 24 A.L.R.2d 112.

It is pointed out in 3 Tiffany, Real Property § 788, at 274 (3d ed. 1939):

> An easement by implication based on a pre-existing quasi easement, comes into being only in connection with a grant or transfer of title to an interest in land, but the creation of the easement does not depend upon the use of a particular form of instrument. . . . And it has been regarded as so passing upon a devise of land as well as of a conveyance, and upon a lease as well as upon a conveyance in fee simple.

See also 1 Tiffany, Landlord and Tenant § 128, p. 818.

An extensive discussion of implied easements, as applied

to the landlord-tenant relationship, is found in *Owsley v. Hamner*, 36 Cal. 2d 710, 718, 227, P.2d 263, 268, 24 A.L.R.2d 112, 120, and we quote a brief excerpt:

Plaintiffs contend that the evidence does not establish that the ways and patio are necessary to make the leased premises tenantable or for the enjoyment of the premises, and, therefore, they do not constitute easements appurtenant by implication. The law is not, however, that for such easements to be implied, they must be absolutely necessary or such as to make the leased property tenantable. The prevailing test, as stated in *Bellon v. Silver Gate Theatres, Inc.*, quoted *supra*, is whether they are "reasonably necessary for the beneficial enjoyment of the property leased." [Citations omitted.] The same test has been held proper in implied easements arising from a conveyance, as distinguished from a lease, of property.

Restatement, Property (1944), discusses the creation of easements by implication, §§ 474, 475, 476. See, also § 484, Comment b, for the extent of such an easement. It is clear that the implication may be created by a lease. § 475 reads:

Creation of Easements by Implication—Form of Conveyance.

In order to create by implication an easement upon the conveyance

(a) of an estate in land, the conveyance must satisfy the formal requisites established by local law for the creation of an *estate in land of the duration of that conveyed.* (Italics ours.)

In Comment a, on the above-quoted section, reference is made to § 9 (Restatement, Property (1936)), which defines "estate" as follows:

The word "estate," as it is used in this Restatement, means an interest in land which

(a) is or may become possessory; and
(b) is ownership measured in *terms of duration.* (Italics are again ours.)

The suggestion that Hellberg, as a tenant, has no right to an easement of necessity or an implied easement appurtenant to land is untenable.

We have discussed the rights of these parties based on their present relationship as landlord and tenant. The

easement of necessity could conceivably terminate before the termination of the lease upon the completion of another access road to the leased property, ending the necessity; but the old Coffin road is clearly appurtenant to the land during the period of the leasehold. Whether, when the lease terminates and the Hellbergs become the contract purchasers or owners of the leased property, the requisites will exist for either an easement of necessity or an implied easement appurtenant to land, we do not now determine. There is some authority that the situation at the time of the transfer of title may determine those issues. *Hubbard v. Grandquist*, 191 Wash. 442, 71 P.2d 410 (1937).

The decree appealed from being too broad in its scope, the cause is remanded for the entry of a new decree. The decree appealed from is affirmed insofar as it requires the defendants not to interfere with the ingress and egress of the plaintiffs and their assignees or successors, at least so long as the landlord-tenant relationship continues; and insofar as it adjudges that the plaintiffs have, as lessees and tenants of the defendants, an easement of necessity, and an implied easement appurtenant to land over the old Coffin road.

The decree being modified, each party will bear his own costs on this appeal.

ROSELLINI, C. J., OTT and HALE, JJ., and RYAN, J. Pro Tem., concur.