FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 JUL 31 AM 10: 50

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ROBERT PERASSO and KATRINA PERASSO, husband and wife, | ) ) ) ) | No. 75356-8-I |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| DOUGLAS F. TURNER, | ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: July 31, 2017 |

VERELLEN, C.J. — In this action to establish an implied easement, the trial court's findings support its conclusion that appellants Robert and Katrina Perasso failed to demonstrate sufficient prior use or necessity for an implied easement by reservation. We therefore affirm.

## FACTS

The Perassos currently own the northernmost of three lots formerly owned by Robert's father, Henry Perasso. An early deed established an easement across the southernmost lot, but it was extinguished when, in a series of conveyances ending in 1974, Henry Perasso purchased all three lots. Until the late 1990s, the two northernmost lots could only be accessed by crossing the southernmost lot on a dirt driveway.

In 1981, Henry Perasso sold the middle lot to his daughter, Nena Moreno. The conveyance did not mention or reserve an access easement across the southernmost lot.

In 1997, a developer constructed a private road, 78th street, along the western boundaries of the Moreno and Perasso lots. It is undisputed that, if permitted by its owners, this road provides alternate access to the Perasso and Moreno properties. The Morenos, in fact, received permission to use the street beginning in 1997.

In 2006, Henry Perasso's widow sold the southernmost lot to respondent Douglas Turner's predecessor in title. This conveyance also did not reserve or mention any access easement for the benefit of the two lots to the north.

In 2013, the owners of the southernmost lot sold their lot to Turner. He testified at trial that there was no visible easement when he purchased the property.

In 2014, Robert and Katrina Perasso purchased the northernmost lot from the Perasso estate. Except for a garage, the lot was vacant and undeveloped at the time of trial.

In 2015, following a dispute over Robert's attempt to gravel a portion of the overgrown easement on Mr. Turner's property, Robert and Katrina filed this action to establish an access easement across Turner's property. The court dismissed most of the Perassos' legal theories, leaving only an implied easement theory for trial.

Following testimony from Robert, Douglas Turner, and a neighbor, Lloyd Sholberg, the trial court ruled that the Perassos failed to establish an easement by implication. The court entered the following findings of fact, which are largely unchallenged on appeal:

In 1997, a private road named 78th Street, was constructed to serve a residential short plat development. It serves as access for the Moreno lot by permission of the private road owners. Prior to 78th street being constructed, the Moreno lot was accessed by the disputed 15 foot driveway. *But since 1997, the Moreno lot has been mainly accessed by 78th street.* Mr. Perasso testified that his use of the 15 foot driveway was sporadic, but that he did use it. . . . Mr. Perasso did not indicate much use of his property other than that he wanted to use it for storage. *He also indicated that he visited his sister using either 78th street,* or the disputed driveway, or both.

Mr. Turner testified that he purchased his property in November of 2013. *He said there was no visible easement, that the area of the driveway was overgrown, and that he graveled the area to his garage. Mr. Turner stated that he never saw anyone using the disputed driveway. . . .*

Mr. Scholbert, owner of the property south of Mr. Turner's property, has lived there since 1994. He indicated that Mr. Perasso's sister used the driveway easement area to access the property until 78th street was put in. *After 78th street was put in, the easement area became overgrown and was not in use.* He indicated that he did not see anyone use the easement driveway after 2006, and that the Turner property itself was completely overgrown for about 3 years.[1]

*Even Mr. Perasso testified that his use of the disputed easement was sporadic, and that he also used 78th street for access.* While the aerial photographs do show a track in the area of the disputed easement, this does not mean that it was visible from the ground . . . . The disputed easement is very narrow, and runs very close to Mr. Turner's garage. Mr. Perasso's property is undeveloped at this point other than having a garage on it. *The owners of 78th Street have given Mr. Perasso limited permission to access his property via 78th Street, but made it clear that it depends on how he is using his property and that they reserve the right to deny him use of the road.*

. . . *Mr. Perasso has not shown continuous use of the disputed easement area.* Mr. Turner was clearly not aware of the existence of the disputed easement area as a conduit to Mr. Perasso's property, *and it appears that Mr. Perasso has been able to utilize 78th street for the use he has historically made of his property which was very limited. Mr. Perasso may also have other remedies for use via 78th Street by a private condemnation action.* The proximity of the proposed easement to Mr.

---

[1] Clerk's Papers (CP) at 10 (emphasis added).

Turner's property would be very burdensome to Mr. Turner's enjoyment of his property.[2]

The trial court entered the following conclusion of law:

> Therefore, while there is evidence of necessity in favor of Mr. Perasso, the lack of continuous and obvious prior use in this case dictate that the Court cannot find that the intentions of the parties regarding this easement was for permanent ingress and egress to the Plaintiff's property. Thus, the Court finds that the Plaintiffs have not satisfied their burden of proof establishing the existence of an implied easement by reservation.[3]

The Perassos appeal.

## ANALYSIS

The sole issue on appeal is whether the Perassos carried their burden of proving that the parties to the 2006 conveyance intended to reserve an access easement over the southernmost lot and that the Perassos are therefore entitled to an easement by implication. Our review is limited to determining whether any challenged findings are supported by substantial evidence and whether the findings in turn support any challenged conclusions of law.[4] We treat unchallenged findings of fact as verities,[5] and we defer to the trial court on matters of conflicting testimony and the persuasiveness, weight, and credibility of the evidence.[6]

To establish an implied easement, three factual predicates must be proved:

---

[2] CP at 12-13 (emphasis added). The facts quoted in the last two paragraphs were labelled "Conclusions of Law" in the court's decision, but we treat mislabeled findings as findings of fact. Willener v. Sweeting, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

[3] CP at 13 (emphasis added).

[4] City of Tacoma v. State, 117 Wn.2d 348, 361, 816 P.2d 7 (1991); Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

[5] In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004); RAP 10.3(g).

[6] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

(1) unity of title and subsequent severance of title by grant of the dominant estate, (2) a prior apparent and continuous quasi-easement prior to severance,[7] and (3) a reasonable necessity for an easement.[8] "The first predicate is an absolute requirement, whereas the second and third predicates serve as aids in determining the cardinal consideration—the presumed intention of the parties."[9] "Because the intention of the parties is the root issue, the presence or absence of either or both of the second and third predicates is not necessarily conclusive."[10]

Here, the parties stipulated below "that there was unity of title until 2006" when Henry Perasso's widow, who then held title to the northernmost and southernmost lots, sold the southernmost lot to the Turners.[11] It is undisputed that the 2006 transfer failed to expressly reserve an easement across the Turner property in favor of the Perassos.

The Perassos contend the second predicate, i.e., a prior apparent and continuous quasi-easement, strongly supports an implied easement in this case. They claim "[t]he driveway across the TURNER property was the only access for years and was used in an open and notorious manner."[12] They also claim the "[u]se of the driveway has been consistent with the nature of the property" and that the easement

_____

[7] "'A 'quasi-easement' refers to the situation where one portion of property is burdened for the benefit of another portion, which would be a legal easement if different persons owned the two portions of property.'" Woodward v. Lopez, 174 Wn. App. 460, 469, 300 P.3d 417 (2013) (quoting McPhaden v. Scott, 95 Wn. App. 431, 437 n.3, 975 P.2d 1033 (1999)).

[8] Boyd v. Sunflower Props. LLC, 197 Wn. App. 137, 144-49, 389 P.3d 626 (2016).

[9] Id. at 144.

[10] Id. at 144-45.

[11] CP at 9.

[12] Appellant's Br. at 4.

itself "has been and remains very visible."[13] These claims ignore contrary evidence and the requirement of *continuous* use.

While the driveway was the only access across the property at one time, the trial court found that access via 78th street became available in 1997 and that the easement was not thereafter in continuous use. Notably absent from the Perassos' brief in this court is any clear assertion that use of the easement prior to severance in 2006 was *continuous*. Nor do the Perassos assign error to, or otherwise address, the court's conclusion that "Mr. Perasso has not shown continuous use of the disputed easement area."[14] Significantly, they also do not challenge the court's finding that the Morenos "used the driveway easement area to access the property until 78th street was put in [in 1997]. *After 78th street was put in, the easement area became overgrown and was not in use.*"[15] In any event, the latter finding is supported by the testimony of Lloyd Scholbert, who observed the property from his nearby residence beginning in 1994. He testified in part that continuous use of the easement ceased in 1997. Robert Perasso also testified that his father used the northernmost lot until he died in 1990.

Similarly, while the Perassos claim the prior use of the easement was "apparent," the court's unchallenged findings, particularly those relating to use after 1997, support its conclusion that the use was not "obvious."[16] To the extent there was a conflict in the evidence on this point, we defer to the court's resolution of that conflict.[17]

---

[13] Appellant's Br. at 2.

[14] CP at 13.

[15] CP at 10 (emphasis added).

[16] CP at 13.

[17] Thomas, 150 Wn.2d at 874-75.

The third and final predicate is whether there is "reasonable necessity" for an easement. The trial court ruled, and Turner does not dispute, that "the easement at issue in this case is clearly an easement by implied reservation" and that "a higher degree of necessity [is] needed for an implied easement by reservation" than for an easement by grant.[18] The court further ruled:

> If land cannot be used without a disproportionate effort and expense, an easement may be implied on the basis of necessity. However, in the case of an easement by reservation, as necessity decreases, a point is reached where necessity will not be sufficiently great to justify the implication of an easement in the favor of the conveyor estate, without reference to a prior use of the land. The nature of the prior use of the land and the amount of use are then used to clarify whether or not the inference of an easement is warranted.[19]

While the court found the Perassos showed some necessity for the easement, it also found they had alternatives that, together with the sporadic use of the easement, weighed against implying an easement. The court stated in part:

> The following facts are most important . . . regarding necessity and prior use. The unity of title was severed in 2006. 78th Street was constructed in 1997. When Mr. Turner purchased his property in 2013, it was overgrown and no throughway was apparent. It appears that the property to the north of Mr. Turner was accessed by 78th street. Even Mr. Perasso testified that his use of the disputed easement was sporadic, and that he also used 78th street for access. . . .The neighbor to the south of Mr. Turner testified that he never saw anyone use the disputed easement after 2006. . . . Mr. Perasso's property is undeveloped at this point other than having a garage on it. *The owners of 78th Street have given Mr. Perasso limited permission to access his property via 78th Street,* but made it clear that it depends on how he is using his property and that they reserve the right to deny him use of the road.
>
> . . . Mr. Perasso has not shown continuous use of the disputed easement area . . . . *[I]t appears that Mr. Perasso has been able to utilize 78th street for the use he has historically made of his property which was very limited. Mr. Perasso may also have other remedies for use via 78th*

---

[18] CP at 11-12.

[19] CP at 12 (citing <u>Adams v. Cullen</u>, 44 Wn.2d 502, 509, 268 P.2d 451 (1954)).

*Street by a private condemnation action.* The proximity of the proposed easement to Mr. Turner's property would be very burdensome to Mr. Turner's enjoyment of his property.[20]

Again, the Perassos fail to directly challenge, or assign error to, the court's findings regarding necessity. Instead, they simply make conclusory statements that "[a]lternate access [to the property] is not available," that their "requests for access to 78th Street have been rejected," and that their "lot is landlocked."[21] To the extent the record contains evidence supporting these claims, it conflicts with evidence that the Merenos have used 78th street to access their property since 1997, that Robert Perasso uses 78th street for access to his and the Morenos properties, and Turner's testimony that he attended a meeting at which the Perassos obtained conditional permission to use 78th street.[22] As mentioned above, we defer to the trial court on matters involving conflicting testimony and the weight, credibility, and persuasiveness of the evidence.[23]

The trial court also noted that, in addition to permissive use of 78th street, the Perassos "may also have other remedies for use via 78th [s]treet by a private condemnation action."[24] At the end of trial, the court and counsel discussed the possibility that the Perassos had the option of bringing either a private condemnation

---

[20] CP at 12-13 (emphasis added).

[21] Appellant's Br. at 5. We note that the Perassos nowhere address whether they have offered compensation in exchange for easement rights on 78th street.

[22] According to Turner, the residents of 78th street were concerned that the Perassos might put a rental on their property and devalue the properties on 78th street. Turner said "the meeting concluded with everybody in agreement that Mr. Perasso could use the road for now until he could tell them what his intentions would be for the property." Report of Proceedings (Mar. 16, 2016) at 39.

[23] Thomas, 150 Wn.2d at 874-75.

[24] CP at 13.

action or an action for easement by necessity.[25] The Perassos nowhere address these potential alternatives. The court did not err in concluding that the Perassos failed to demonstrate sufficient necessity to warrant an implied easement by reservation.

In conclusion, the court's findings support its conclusion that, on balance, the second and third predicates do not support a finding that the parties to the 2006 conveyance intended to reserve an implied access easement across Turner's property.

Affirmed.

WE CONCUR:

_____                    _____
Leach, J.                                            Cox, J.

---

[25] An easement by necessity is based on public policy against landlocked property. Boyd, 197 Wn. App. at 144. The elements of an easement by necessity are: (1) a landowner conveys part of his land and (2) retains part, usually an adjoining parcel, and (3) after the severance of the parcels, it is necessary to pass over one of them to reach a public street or road from the other. Hellberg v. Coffin Sheep Co., 66 Wn.2d 664, 666-67, 404 P.2d 770 (1965); 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.5, at 93 (2d ed. 2004). Although an easement by necessity does not require a showing of prior use, it does require a showing of strict necessity. Id. Easement by necessity and private condemnation are different and distinct actions. See, e.g., Hellberg, 66 Wn.2d at 666-67.