
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

DYONNE A. JACOBS AS PERSONAL )
REPRESENTATIVE OF STEPHEN A. )          No. 35308-7-III
JACOBS, JR., DECEASED and )
DYONNE A. JACOBS, )
)
          Respondents, )
) UNPUBLISHED OPINION
     v. )
)
RANDALL C. ROBERTS, SR., and )
JOYCE L. ROBERTS, husband and wife; )
FERNANDO C. RODRIGUEZ and )
MARIA RODRIGUEZ, husband and wife, )
)
          Appellants. )

KORSMO, J. — After a bench trial, the court concluded that the seller had

adversely possessed a road that he originally had sold without reserving any easement for

his own use. The appellants raise numerous issues, not all of which we need to resolve.

The judgment is reversed and the case is remanded for a new trial.

FACTS

The property in question was once owned entirely by Stephen Jacobs. He died

during the pendency of this case and his estate was substituted as a party. The 20-acre

parcel is rural in character and is rectangular in shape, with the north-south dimension

nearly twice that of the east-west.  Jacobs purchased the land, in Benton County, in 1963 and subdivided it into four parcels, each roughly five-acres in size, in 1976. [1]

The northern edges of the property abut a public roadway, Game Farm Road. Parcel 1 occupies the northeast portion of the property, with the remaining lands numbered in clockwise order: the bulk of parcel 2 is south of parcel 1, while most of parcel 3 is to the west of parcel 2 and parcel 4 is north of parcel 3 and across from parcel 1.  As a result, parcels 1 and 4 abut Game Farm Road.  Side-by-side 20-foot strips of land, running north and south between parcels 1 and 4, were deeded respectively to parcels 2 and 3 to allow those parcels access to Game Farm Road.  Without that "panhandle" access, those two southern parcels would be landlocked.  All four parcels use a common driveway onto Game Farm Road.  The eastern strip, belonging to parcel 2, contains a roadway.  The western strip, belonging to parcel 3, appears to have never been used as a roadway.  Both parcel 1 and parcel 4 have driveways from the parcel 2 panhandle; the parcel 4 driveway from the roadway also is located on a portion of the parcel 3 panhandle.

Jacobs relinquished his title to parcel 3 in 1977 and to parcel 2 in 1983, deeding the respective panhandles without reserving any easement to use them.  In 1992, parcel 2 came into the possession of Joyce and Randall Roberts; parcel 3 became the property of

---

[1] The property survey is attached as Appendix A.

2

Fernando and Maria Rodriguez around 2005. Jacobs continued to own parcels 1 and 4.

He and his new wife had placed a mobile home on parcel 4 in 1984 and thereafter lived

there, while renting his former home on parcel 1 to her son, Douglas McCance. The

residences are located on the northern edges of parcels 1 and 4 close to Game Farm Road.

The majority of the land on those two parcels is devoted to agricultural pursuits,

primarily growing hay. Farming equipment has used or crossed the roadway strip

between parcels 1 and 4 since 1984.

Although never used as a roadway, the parcel 3 panhandle does not appear to have

been encroached on until after Jacobs moved from parcel 1 to parcel 4. A driveway built

to the mobile home and other improvements to parcel 4 eventually encroached on that

panhandle. Nonetheless, parcel 3 owners mowed the remainder of the panhandle on

occasion. A barbed wire fence ran alongside the roadway on the parcel 1 side.

The relationship between McCance and the occupants of parcels 2 and 3

deteriorated over time, with allegations of McCance engaging in threatening behavior and

damaging the roadway. McCance removed the barbed wire fence in 2007 in order to fly

model airplanes between parcels 1 and 4. In July 2012, both the Robertses and the

Rodríguezes obtained restraining orders against McCance that prevented him from

coming onto their property or injuring the roadway. The following month, they

commissioned a survey of their respective roadways.[2]  After the survey, both owners put

up fences along their properties, including the panhandle strips.  The Rodriquez

panhandle fence stopped 200 feet short of Game Farm Road in order not to interfere with

the Jacobs driveway onto parcel 4.  The Roberts panhandle fence ran within 20 feet of the

road, leaving a walking space to the road.

Jacobs responded by filing this lawsuit in mid-2013 against both the Robertses and

the Rodríguezes, asking the court to find that he had prescriptive easements across both

panhandles and requesting that the fences be removed.  Mr. Jacobs died in December

2013.  At the end of 2016, the Jacobs estate sought to amend its complaint to add

allegations of implied easement (easement of necessity), a finding that the fences

constituted "spite fences," and to adversely possess the parcel 3 panhandle.  Following

mediation and a settlement agreement, which Jacobs backed out of, the amendment was

granted.

The case proceeded to bench trial in March 2017.  The following month, the trial

court issued a letter ruling in favor of Jacobs.  The court determined that Jacobs had

adversely possessed the parcel 3 panhandle and had established both prescriptive and

implied easements over the roadway.  The court also ruled that the 2012 fencing

constituted a spite fence and directed that the new fencing be moved or removed.  The

---

[2] *See* Appendix A.

4

court also denied the defendants' counterclaims, including the contention by the

Rodríguezes that they had an easement of necessity across the parcel 3 panhandle.

Jacobs then successfully sought attorney fees from both defendants. Findings in

support of the bench trial were entered and a judgment issued. The defendants then filed

a timely appeal to this court. A panel heard oral argument of the case.

ANALYSIS

Although this appeal presents numerous issues from both sides, we need discuss

few of them in light of our decision to reverse the judgment and remand for a new trial.[3]

The findings do not establish that the presumption of neighborly accommodation was

properly addressed.

A trial to the bench must result in written findings of fact and conclusions of law.

CR 52(a)(1). This court reviews a trial court's decision following a bench trial to

determine whether substantial evidence supports any challenged findings and whether the

findings support the conclusions of law. *State v. Hovig*, 149 Wn. App. 1, 8, 202 P.3d 318

(2009). "Substantial evidence" is sufficient evidence to persuade a fair-minded person of

the truth of the declared premise. *Panorama Vill. Homeowners Ass'n v. Golden Rule

Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). Conclusions of law are

reviewed de novo. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). We

---

[3] The remaining contentions involve issues that either were correctly decided by
the trial court or are now moot.

defer to the trial court's credibility determinations; we will not reweigh evidence even if we would have resolved conflicting evidence differently. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Stated another way, an appellate court is not in a position to find persuasive evidence that the trier of fact found unpersuasive. *Quinn*, 153 Wn. App. at 717. In determining the sufficiency of evidence, an appellate court need only consider evidence favorable to the prevailing party. *Bland v. Mentor*, 63 Wn.2d 150, 155, 385 P.2d 727 (1963).

Our review of trial court evidentiary decisions likewise is governed by well settled law. The decision to admit or exclude evidence is reviewed for abuse of discretion. *Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 262, 828 P.2d 597 (1992). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). In a bench trial, judges are presumed to follow the law and to consider evidence solely for proper purposes. *State v. Adams*, 91 Wn.2d 86, 93, 586 P.2d 1168 (1978); *State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970); *State v. Bell*, 59 Wn.2d 338, 360, 368 P.2d 177 (1962).

The trial court very nicely summarized the elements of the easement and adverse possession claims in its letter opinion. Common to the theories of prescriptive easement and adverse possession is the idea that the owner's property is being used without his permission. An element of a prescriptive easement claim is that the claimant's use of the

6

land was adverse to that of the true owner of the property. *Nw. Cities Gas Co. v. W. Fuel Co. Inc.*, 13 Wn.2d 75, 85, 123 P.2d 771 (1942). One element of adverse possession is proof that the claimant used the property in a manner hostile to that of the true owner. *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984).

In *Gamboa v. Clark*, 183 Wn.2d 38, 348 P.3d 1214 (2015), the court considered an appeal involving joint use of a gravel roadway by the parties, one of whom used it as the driveway to their home, while the other used it to access their grape field. *Id*. at 41. Each party was aware of the other's use of the roadway and neither side complained until disputes arose later over collateral matters. *Id*. Eventually, ownership of the roadway became disputed and a survey was performed. The survey showed that although a portion of the roadway was on the Gamboa property, the bulk of it was on the Clark's portion. *Id*. The Gamboas then sued to establish a right to use the roadway to access their house under a theory of prescriptive easement. *Id*. at 40, 41.

Concluding that there was no evidence of permissive use, the trial court found for the Gamboas. *Id*. at 41-42. A divided panel of this court[4] reversed, concluding that the presumption should be in favor of neighborly accommodation. *Id*. at 42. The Washington Supreme Court granted review and ultimately affirmed this court's decision. Canvassing its prior case law at some length in order to reconcile competing

---

[4] *Gamboa v. Clark*, 180 Wn. App. 256, 321 P.3d 1236 (2014), *aff'd*, 183 Wn.2d 38, 348 P.3d 1214 (2015).

presumptions that had grown up over the years, the court concluded that a presumption of

neighborly accommodation applied, particularly in the absence of prior disputes over use

of the property. *Id*. at 43-51. The court ruled that the Gamboas had failed to overcome

the presumption of permissive use due to lack of evidence that either they had interfered

with the Clarks' use of the roadway or that the Clarks had asserted that the Gamboas had

an easement over the roadway. *Id*. at 51-52. Hence, the court affirmed this court's

ruling. *Id*. at 52-53.

As to the salient facts, *Gamboa* is identical to this case—a commonly shared

roadway before disputes led to concern over actual ownership of the road, a survey to

establish boundaries, and then litigation. Although *Gamboa* presented solely a

prescriptive easement claim, which is only one of the three theories advanced by the

estate to argue its right to use the roadway, we conclude that *Gamboa* is instructive on all

aspects of the contested issues that were before the trial court. The trial court's letter

opinion did not address the *Gamboa* presumption of permissive use, nor did the written

findings or conclusions explain how Jacobs had overcome the presumption. Indeed, only

finding of fact 6 even mentions the issue. Clerk's Papers at 672 (finding that use of the

road "was more than a mere neighborly accommodation").

This error requires reversal. Whether the evidence overcame the presumption was

a question that needed to be decided by the trial court. Unlike *Gamboa*, here the trial

court found for Jacobs on additional theories of recovery, leaving us in a position where it

8

is difficult to grant judgment to the appellants despite the estate's apparent failure to prove its prescriptive easement claim.

However, the failure to address the presumption of permissive use also infected the adverse possession claim. Consent is fatal to the hostility element of adverse possession. *E.g.*, *Chaplin*, 100 Wn.2d at 861-862. How the evidence relating to neighborly accommodation played out in the other causes of action, if it even was considered, is unclear. The theories of recovery factually were intertwined and we believe the evidence needed to be weighed even if no presumption was at play. How the trial court's decision on the prescriptive easement impacted its decision-making on the other causes of action, particularly the spite fence claim, also is not something we can adequately consider on this record and presents an additional reason for holding a new trial.

Accordingly, we reverse the entire judgment, including the attorney fee award, and remand for a new trial. We have some additional concerns that we mention here in case they are of benefit to the parties in reaching a settlement or in preparing for a retrial.

First, it does not appear that an easement by necessity could exist since parcels 1 and 4 both have access to Game Farm Road. By definition, the two parcels are not landlocked. Thus, there could be no "necessity" justifying an easement because there is no need to use the panhandles to access the land. *E.g.*, *Hellberg v. Coffin Sheep Co.*, 66 Wn.2d 664, 666-667, 404 P.2d 770 (1965). It may have been more *convenient* for Jacobs

to use the roadway, but it was not *necessary* that he do so because he could have created, and apparently still could create, additional entries for both parcel 1 and parcel 4.[5]

Second, we note that our research did not disclose any other case across the country where an adverse possession ruling resulted in the subservient estate becoming landlocked. Landlocking property is against the public policy of this state. *Hellberg*, 66 Wn.2d at 666. If Jacobs should adversely possess the parcel 3 panhandle, it would appear to give the Rodríguezes a strong case for finding an easement of necessity against Jacobs and require the removal of their encroachments, perhaps placing them in a worse position than before they initiated this litigation.

Third, although we need not consider the sufficiency of the evidence concerning the spite fence ruling in view of the fact that a retrial is required and the evidence may well be different in that proceeding, the court should provide more detailed findings in the event it again reaches that conclusion. McCance was subject to multiple court orders preventing him from coming on to his neighbors' lands. Their efforts to prevent him from doing so do not seem motivated by anything other than self-protection and/or withdrawing permission to use the southern portions of their panhandle property.

---

[5] The photo exhibits do not suggest that the current driveway is the only possible access to Game Farm Road from parcels 1 or 4. It does appear to be the only current access, but whether geography or county code provisions prohibit other potential connections is not established in this record.

Finally, in the event that a prescriptive easement is again found in favor of Jacobs, the extent of that easement should be described, particularly if it extends to the whole length of either or both panhandles.[6] It appears that access across the entire road length is not essential to permit access to the farmland sections of parcels 1 and 4, and perhaps any easement should exist only to the extent of providing convenient access to the farming areas from the road rather than require use of the entire roadway.

For the reasons stated, we reverse the judgment and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

---

[6] Randall Roberts was the one doing the harvesting for many years and also had no need of permission due to his ownership of the road. Whether those actions can be considered "adverse" to his ownership interests in this context is an intriguing question, and perhaps one that cuts against the estate's claim.

No. 35308-7-III
*Estate of Jacobs, et us v. Roberts, et al*

# APPENDIX

No. 35308-7-III
*Estate of Jacobs, et us v. Roberts, et al*



0-000000231