# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2016 DEC 19 AM 10: 54
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

|  |  |
|---|---|
| ROBERT BOYD and MARGARET WEIDNER, husband and wife,<br><br>Appellants,<br><br>v.<br><br>SUNFLOWER PROPERTIES LLC, a Washington limited liability company,<br><br>Respondent. | DIVISION ONE<br><br>No. 74631-6-I<br>(consol. with No. 75095-0-I)<br><br>PUBLISHED OPINION<br><br>FILED: December 19, 2016 |

DWYER, J. — Robert Boyd and Margaret Weidner (Boyd/Weidner) filed a complaint against Sunflower Properties, LLC (Sunflower), seeking an implied easement over a gravel road on Sunflower's property. The trial court granted Sunflower's motion for summary judgment and denied Sunflower's motion for an award of attorney fees. On appeal, Boyd/Weidner contend that the trial court failed to properly consider the reasonable necessity of the desired easement and erred by granting Sunflower's motion for summary judgment. Sunflower cross appeals, asserting that the trial court erred by denying its motion for an award of attorney fees after concluding that this was not an action on a contract and, thus, that the attorney fee provision of the parties' purchase and sale agreement

(Agreement) did not afford an entitlement to such an award. The trial court ruled correctly. We affirm.

I

In 2001, Sunflower purchased lots 4 through 8 and one-half of lot 3 of block 5 of Gailey's First Addition to Eastsound, Orcas Island. At that time, and from the same owner, Sunflower also purchased an unplatted, triangular parcel of land directly to the north of the aforementioned lots. An access and utility easement, Geer Lane, extends across the southern and northern borders of block 5, following the border of the unplatted parcel.

In 2002, Sunflower modified the boundary line for lot 3, merging it with the unplatted parcel to the north. Thereafter, Sunflower submitted a listing agreement to advertise lots 4 and 5 for sale. Lots 4 and 5 are physically accessible either by way of the southern Geer Lane or by way of a gravel road that extends off of the northern Geer Lane and runs through the portion of lot 3 that was formerly the unplatted parcel. Only the northern portions of lots 4 and 5 are level, with the remainder of the property being a slope that leads down to the southern Geer Lane. The listing service agreement that was submitted by Sunflower described lots 4 and 5 as "on right towards the end of [Geer] Lane." However, the posted advertisement described the properties' access as "Driveway to property on right hand side" and listed the road information as "Gravel, Privately Maintained, Recorded Maint. Agrm."

In 2008, Boyd/Weidner offered to purchase lots 4 and 5 from Sunflower, contingent upon Sunflower obtaining a boundary line modification "encompassing

the level area between the north boundary line of properties being conveyed herein and Geer Lane." Sunflower rejected the condition. The parties instead agreed to a much smaller boundary line adjustment that did not extend to Geer Lane and did not include the gravel road. At no time during the negotiation or sale of the properties did either party expressly state whether access to lots 4 and 5 was permitted via the gravel road extending off of the northern Geer Lane.[1]

Boyd/Weidner did not attempt to use or develop their property until late 2011, when they obtained a professional topographic survey of the property. The topographic report stated, in reference to the gravel road, "driveway use over this area appears to be without benefit of easement rights." Boyd/Weidner and Sunflower's representative subsequently exchanged telephone calls and e-mails regarding the use of the gravel road. Sunflower offered to sell the entirety of lot 3 to Boyd/Weidner after learning of their interest in the use of the gravel road, but Boyd/Weidner rejected the offer. In e-mail correspondence, Boyd/Weidner stated their belief that an easement over the gravel road should have been included in the original sale of the property. Sunflower's position in these exchanges was that no easement was ever granted or implied with respect to the gravel road.

Nevertheless, in 2014, Boyd/Weidner sent letters to Sunflower and another neighbor informing them that construction would begin on lots 4 and 5 in 2015, with Boyd/Weidner using the gravel road to access the properties.

---

[1] The seller disclosure statements asked, "[a]re there any rights-of-way, easements, or access limitations that may affect Buyer's use of the property?" Next to this, Sunflower wrote in the words "Geer Lane Access."

Sunflower sent a reply letter restating its position that Boyd/Weidner did not have a legal right to use the gravel road. This reply letter stated that no easement over the gravel road was granted at the time of sale and that the only legal access to lots 4 and 5 is via the southern Geer Lane—a position corroborated by the topographic survey Boyd/Weidner had commissioned in 2011. Boyd/Weidner then brought this action in San Juan County Superior Court seeking a judgment confirming the existence of an implied easement over the gravel road.

Sunflower moved for summary judgment. The trial court granted Sunflower's motion, concluding that Boyd/Weidner had failed to provide competent evidence of apparent and continued use of the gravel road to access lots 4 and 5 either before or after Sunflower acquired the property. Sunflower then moved for an award of attorney fees pursuant to the fee shifting provision in the Agreement, but the trial court denied this motion, concluding that Boyd/Weidner's claim was an equitable one, not a claim brought on a contract. Boyd/Weidner timely appealed the trial court's grant of summary judgment. Sunflower cross appealed the denial of its request for an award of attorney fees.

II

Boyd/Weidner contend that the trial court erred by granting Sunflower's motion for summary judgment. We disagree.

We review de novo a trial court's order granting summary judgment, performing the same inquiry as the trial court. MacMeekin v. Low Income Hous. Inst., Inc., 111 Wn. App. 188, 195, 45 P.3d 570 (2002). A motion for summary judgment may be granted if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. CR 56(c). In reviewing a summary judgment order, we view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Holmquist v. King County, 182 Wn. App. 200, 207, 328 P.3d 1000, review denied, 181 Wn.2d 1029 (2014). Once there has been an initial showing of the absence of any genuine issue of material fact, the party opposing summary judgment must respond with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues. Rucker v. Novastar Mortg., Inc., 177 Wn. App. 1, 10, 311 P.3d 31 (2013).

## A

Because of the complex nature and wide variety of easements, it is prudent to first discuss the defining characteristics of easements that arise by means other than through an express grant. Easements may arise in several contexts and are often called by various names. Those easements that arise by operation of law can be characterized in four ways: (1) prescriptive easements, (2) easements by estoppel, (3) easements of necessity, and (4) easements by implication (sometimes referred to as quasi-easements, easements implied by grant, or easements implied by prior use).

The requirements to establish a prescriptive easement are the same as those to establish adverse possession: open and notorious use of the servient land; over a uniform route, continuous and uninterrupted for 10 years, adverse to the owner of the land sought to be subjected, and with the knowledge of such

owner at a time when he was able in law to assert and enforce his rights. See, e.g., Kunkel v. Fisher, 106 Wn. App. 599, 602, 23 P.3d 1128 (2001).

Whereas prescriptive easements focus on the actions of the party claiming the easement, easements by estoppel center on the actions of the owner of the servient estate. Easement by estoppel can be established through a showing of "'(1) misrepresentation or fraudulent failure to speak and (2) reasonable detrimental reliance' on the misrepresentation or failure to speak." Kimberly H. Bryant & R. Clay Larkin, *Understanding Unconventional Easements and Rights of Entry*, 33 ENERGY & MIN. L. INST. § 15.03[2], at 524-25 (2012) (quoting JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND § 6.1 (2012)); see, e.g., Canterbury Shores Assocs. v. Lakeshore Props., Inc., 18 Wn. App. 825, 827, 572 P.2d 742 (1977).

Implied easements and easements by necessity are more closely linked. Indeed, both of these interests in land are concerned primarily with the parties' intentions and both can be evidenced by demonstrating common ownership, severance, and necessity. However, the doctrine of easement by necessity was borne out of the public policy disfavoring leaving property landlocked and rendered useless. See, e.g., Hellberg v. Coffin Sheep Co., 66 Wn.2d 664, 666, 404 P.2d 770 (1965). As a result, easements by necessity do not require a showing of prior use but do require a showing of strict necessity. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.5, at 93 (2d ed. 2004). However, even when the use of an easement may be strictly necessary and all other elements of the claim are satisfied, an

easement by necessity will not be imposed contrary to the parties' intent. Visser v. Craig, 139 Wn. App. 152, 164-65, 159 P.3d 453 (2007).

This matter concerns an implied easement. The principle underlying implied easements is that a grant of land is impliedly accompanied by all things necessary to its reasonable use and enjoyment. MacMeekin, 111 Wn. App. at 195. Generally, to establish the existence of an implied easement, three essential predicates must be proved: (1) unity of title and subsequent separation by grant of the dominant estate, (2) prior apparent and continuous quasi easement for the benefit of one part of the estate to the detriment of another, and (3) the easement must be reasonably necessary for the proper enjoyment of the dominant estate. Adams v. Cullen, 44 Wn.2d 502, 505, 268 P.2d 451 (1954); Silver v. Strohm, 39 Wn.2d 1, 5, 234 P.2d 481 (1951).

The first predicate is an absolute requirement, whereas the second and third predicates serve as aids in determining the cardinal consideration—the presumed intention of the parties. Hellberg, 66 Wn.2d at 668 (quoting Adams, 44 Wn.2d at 505-06). Because the intention of the parties is the root issue, the presence or absence of either or both of the second and third predicates is not necessarily conclusive. Hellberg, 66 Wn.2d at 668 (quoting Rogers v. Cation, 9 Wn.2d 369, 376, 115 P.2d 702 (1941)).

B

1

Here, there was unity of title and a subsequent separation. Sunflower purchased one-half of lot 3, the unplatted parcel, and the entirety of lots 4

through 8 of block 5 from a common owner and subsequently sold lots 4 and 5 to Boyd/Weidner. Hence, the first factor is satisfied.

2

With regard to the second factor, Boyd/Weidner contend that Sunflower and the property's prior owners accessed lots 4 and 5 using the gravel road when they owned those lots. However, Boyd/Weidner have provided no evidence supporting this assertion. Instead, Boyd/Weidner rely on (1) the property listing advertisements that identify a "[d]riveway . . . on right hand side" of lots 4 and 5, (2) Sunflower's continued use of the gravel road to access lot 3 after the sale of lots 4 and 5, (3) Sunflower's use of the gravel road to lay gravel on lots 4 and 5, and (4) the implication of prior use based on the existence of the gravel road. These assertions, however, do not establish that Sunflower, or any prior owner, apparently and *continuously* used the gravel road "for the benefit of one part of the estate to the detriment of the other." Adams, 44 Wn.2d at 505.

The advertisements plainly do not establish prior apparent and continuous use of the gravel road to access lots 4 and 5. Although the advertisements identify the gravel road as the access to lots 4 and 5, the listing agreement Sunflower submitted to the advertising agency made no mention of the gravel road. In any event, the contents of the advertisements say nothing regarding the history of the use of the gravel road. Similarly, Sunflower's current use of the gravel road to access its own property likewise does not establish that Sunflower, or any prior owner, continuously accessed lots 4 and 5 by using the gravel road.

Although Sunflower submitted deposition testimony stating that the gravel road was used to access lots 4 and 5 for the limited purpose of laying gravel and bolstering an existing retaining wall, such a use does not establish a *continuous* use of the gravel road but, rather, indicates merely sporadic, incidental uses. Boyd/Weidner point to nothing in the record establishing that Sunflower used the gravel road to access lots 4 and 5 on more than a few, rare occasions.

Finally, prior apparent and continuous use cannot be demonstrated through implication. The mere fact that the gravel road terminates within Boyd/Weidner's property does not establish that any prior owner continuously used the gravel road to access those lots. As the trial court noted, "[i]t is not for the Court to speculate on how the gravel area has been used. Rather, it is for [Boyd/Weidner] to provide some reasonable quantum of evidence that it has actually been continuously used as access to their property." Thus, Boyd/Weidner failed to establish prior apparent and continuous use of the gravel road to access lots 4 and 5.

3

Boyd/Weidner next contend that the trial court erred by declining to address the reasonable necessity of the desired easement. We disagree. Boyd/Weidner presented the trial court with no evidence that prior owners continuously used the gravel road to access lots 4 and 5 and no evidence that Sunflower intended—by conveying the lots to Boyd/Weidner—to allow unprecedented access to lots 4 and 5 over its own property—property which Sunflower specifically refused to include in the boundary line modification made

as part of the sale to Boyd/Weidner. As reasonable necessity is merely an aid in determining the intent of the parties, the trial court did not err.

In any event, on de novo review, we conclude that Boyd/Weidner did not establish that an easement over the gravel road is reasonably necessary for the use and enjoyment of their property and, accordingly, was impliedly conveyed to them in the sale. Boyd/Weidner can access lots 4 and 5 from the southern Geer Lane. Although the topography of the lots makes it most convenient for Boyd/Weidner to build on the northern portions of lots 4 and 5, Sunflower's managing member testified that it would not be prohibitively expensive to construct a driveway to those portions of lots 4 and 5 from the southern Geer Lane—estimating a cost of no more than $10,000-$15,000.[2] Boyd/Weidner dispute this estimate but offered no admissible evidence setting forth a higher cost. Thus, the sole evidence regarding the feasibility of constructing a driveway from the southern Geer Lane to the northern part of lots 4 and 5 weighs against Boyd/Weidner's claim.[3]

Boyd/Weidner do not contend that use of the gravel road is strictly necessary to reach their property. Rather, they rely on the comparative convenience of using the gravel road to establish reasonable necessity. Although Boyd/Weidner are correct that proving strict necessity is not required in

---

[2] For context, the total purchase price of both lots was $305,000.

[3] On appeal, in an argument not presented to the trial court, Boyd/Weidner cite to various provisions of the San Juan County Code to buttress their contention that constructing a driveway from the southern Geer Lane would be unreasonably difficult. However, they do not contend that the code actually prevents them from constructing such a driveway. Rather, they merely contend that it would be difficult to do so in compliance with the code. Even were this argument properly raised, which it is not, RAP 9.12, we would conclude that such bare assertions do not establish reasonable necessity.

-10-

order to establish the existence of an implied easement, they mischaracterize the relevant case authority and ignore the fundamental purpose underlying the analysis of necessity—namely, to determine the intent of the parties.

Boyd/Weidner first contend that reasonable necessity can be established through a showing that their property is more valuable with the easement than without. In support of this contention, they rely on Bushy v. Weldon, 30 Wn.2d 266, 191 P.2d 302 (1948). Bushy involved a driveway, built on the border of two lots, which had been continuously used by the owners of the separate lots since its creation. Although the court in Bushy placed importance on the excessive cost that construction of a new driveway would entail, this was but one of many factors that contributed to the court's ruling. The court in Bushy concluded that the intention to construct the existing driveway for the mutual use of the parties was clear, 30 Wn.2d at 271, a result that does not support Boyd/Weidner's assertion that increased value alone can be dispositive.

Next, Boyd/Weidner contend that reasonable necessity need only be considered with regard to the portions of lots 4 and 5 on which they wish to build, rather than their entire estate. To support this contention, Boyd/Weidner rely on Hellberg v. Coffin Sheep Co., 66 Wn.2d 664. Yet, the "portion" of property that the court in Hellberg referred to was that of the *entire dominant estate*—not, as Boyd/Weidner contend, only a subsection of the dominant estate.

> "Easements by implication arise where property has been held in a unified title, and during such time an open and notorious servitude has apparently been impressed upon one part of the estate *in favor of another part*, and such servitude, at the time that the unity of title has been dissolved by a division of the property or a severance of the title, has been in use and is reasonably

-11-

necessary for the fair enjoyment *of the portion benefited* by such use."

Hellberg, 66 Wn.2d at 667 (emphasis added) (quoting Bailey v. Hennessey, 112 Wash. 45, 48, 191 P. 863 (1920)).[4] Hellberg does not support Boyd/Weidner's assertion that reasonable necessity should only be considered with regard to the northern part of their property.

As long-established, reasonable necessity serves as an aid in determining the intent of the parties. Hellberg, 66 Wn.2d at 668 (quoting Adams, 44 Wn.2d at 505-06). Boyd/Weidner have not shown that any reasonable necessity supports a determination that Sunflower intended to convey to them an easement over the gravel road.

## C

Equitable remedies, such as the implied easement that Boyd/Weidner seek, do not exist to circumvent written agreements. See Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604, 137 P.2d 97 (1943) ("A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract."). Moreover, where parties have reduced an agreement to a writing, which in light of its completeness and specificity reasonably appears to be a complete agreement, it is presumed that such writing is the final expression of the parties. RESTATEMENT (SECOND) OF CONTRACTS,

---

[4] Boyd/Weidner also assert that the court in Hellberg granted an implied easement even though the property was potentially accessible from a different location. This is incorrect. The court specifically stated that the plaintiff's property was "landlocked by the property of others," except for the road over which they claimed an implied easement. Hellberg, 66 Wn.2d at 665.

§ 209(3) (1979). Accordingly, implied easements are not favored by the courts as they are "in derogation of the rule that written instruments speak for themselves." 1 WASH. STATE BAR ASS'N WASHINGTON REAL PROPERTY DESKBOOK § 10.3(3)(a) *Easements and Licenses* 10-14 (1997).

Here, the Agreement lists numerous easements that were expressly granted to Boyd/Weidner upon the sale of lots 4 and 5—yet, there is no mention of the gravel road. The Agreement specifically provided Boyd/Weidner with an opportunity to review the access available to lots 4 and 5 and confirm the suitability of the property for their purposes. Boyd/Weidner declined to do so.

Boyd/Weidner have presented no evidence that Sunflower intended to convey to them an easement over the gravel road and cannot establish that such an easement was implied through prior use and reasonable necessity. To defeat a motion for summary judgment, Boyd/Weidner cannot rely on speculation and argumentative assertions that unresolved factual issues remain but, rather, must set forth specific facts that sufficiently rebut Sunflower's contentions. Summit-Waller Citizens Ass'n v. Pierce County, 77 Wn. App. 384, 396, 895 P.2d 405 (1995). They have not done so. Accordingly, the trial court properly granted Sunflower's motion for summary judgment.

III

Sunflower contends that the trial court erred by denying its motion for an award of attorney fees pursuant to the Agreement. We disagree.

We review the denial of a motion for an award of attorney fees de novo. Little v. King, 147 Wn. App. 883, 890, 198 P.3d 525 (2008). A prevailing party

may recover attorney fees pursuant to a contractual fee-shifting provision if the action involves claims "on the contract." Hemenway v. Miller, 116 Wn.2d 725, 742-43, 807 P.2d 863 (1991). "If a party alleges breach of a duty imposed by an external source, such as a statute or the common law, the party does not bring an action on the contract, even if the duty would not exist in the absence of a contractual relationship." Boguch v. Landover Corp., 153 Wn. App. 595, 615, 224 P.3d 795 (2009). For example, a doctor who commits medical malpractice while performing a medical procedure pursuant to a contract is not liable *on the contract* for the malpractice. Boguch, 153 Wn. App. at 617.

The Agreement signed by the parties states, "If Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses."[5] Sunflower contends that Boyd/Weidner's claim for an implied easement necessarily concerns the Agreement because litigation of the implied easement is impossible without reference to the Agreement. Sunflower's analysis is unavailing.

Implied easements are a product of the common law, existing to ensure that the silent intent of the parties to transfer the easement survives the sale of the property. Malsch v. Waggoner, 62 Wash. 470, 476, 114 P. 446 (1911). Although it is true that litigation over an implied easement may require the trial court to look to the written contract between the parties, the contract itself is not "central to the dispute" but, rather, merely evidence of the sale. Tradewell Grp.,

---

[5] Although "Agreement" is not defined in the purchase and sale agreement, in every instance where the word is used therein it is clear that it refers to the document itself, not to the transaction between the parties.

Inc. v. Mavis, 71 Wn. App. 120, 130, 857 P.2d 1053 (1993) (citing Seattle-First Nat'l Bank v. Wash. Ins. Guar. Ass'n, 116 Wn.2d 398, 413, 804 P.2d 1263 (1991)). For instance, if the owner of a dominant estate sold that estate to a third party, the third party could bring an action for the establishment of an easement even though that party was not a party to the contract of sale. This would not be an action "on the contract" even though it is the same claim that the original owner would have had and may require reference to the contract as an evidentiary matter. The same is true here.

The trial court correctly concluded:

Here the facts offered in support of Plaintiffs' implied easement claim stem from the events leading up to the parties' formation of the agreement and from the fact that the agreement was performed (i.e. title was transferred). But it is those facts, not the existence of or the provisions in the agreement, that support the claim. Without those facts, this particular claim would not exist. But the legal basis for the claim was not created by the fact of or the provisions in the agreement.

There was no error.

Affirmed.

We concur: