# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SAMIR RATHOD and DARSHANA RATHOD, husband and wife,

                Plaintiffs,

      v.

FEELY INDUSTRIES, LLC, d/b/a TRUE CUSTOM CABINETRY, a Washington limited liability company; TGC INC., a Washington corporation; and RLI CORP. d/b/a CBIC, an Illinois corporation,

                Defendants.

_____

BUILDERS' INSULATION OF OREGON, LLC, an Oregon limited liability company,

                Respondent,

      v.

JEFF HALLSTROM CONSTRUCTION, INC., a Washington State corporation,

                Defendant.

SAMIR RATHOD and DARSHANA RATHOD, and the marital community composed thereof,

                Appellants.

No. 84256-1-I

DIVISION ONE

UNPUBLISHED OPINION

_____

JEFF HALLSTROM CONSTRUCTION, INC., a Washington corporation,

     Plaintiff,

  v.

SAMIR RATHOD and DARSHANA RATHOD, and the marital community composed thereof,

     Defendants.

_____

NORCO FIRE PROTECTION, INC., a Washington corporation,

     Plaintiff,

  v.

SAMIR RATHOD and DARSHANA RATHOD, and the marital community composed thereof,

     Defendants.

WESTERN SURETY CO., a South Dakota corporation,

     Defendant.

COBURN, J. — Samir and Darshana Rathod wanted to build their dream home. That endeavor resulted in the consolidation of three lawsuits involving eight parties and multiple claims and cross claims. This appeal involves one dispute that arose after the Rathods failed to pay Builders' Insulation of Oregon (Builders) for their work insulating the Mercer Island home the Rathods were building. The trial court found the Rathods

breached their contract with Builders and ordered the Rathods to pay Builders the total value of the contract as well as Builders' attorney fees and costs. The Rathods challenge the award of attorney fees and a summary judgment ruling determining the existence of a contract. We affirm the summary judgment ruling, but reverse the award of attorney fees and remand because the trial court based its attorney fees award, in part, on facts not supported in the record.

FACTS

Because the challenge is to a grant of summary judgment, we discuss substantive facts as presented at the time of summary judgment and not from the trial record.

The Rathods purchased a property on Mercer Island where they planned to build their "dream home." In May 2018, Samir[1] terminated his contract with his general contractor and hired Jeff Hallstrom Construction Inc. (JHCI) as the new general contractor. In June 2018, JHCI presented Samir with a bid for insulation services from Builders. Samir discussed several changes to the bid directly with Builders employees Dale Nichols and Francisco Cortez between June and August 2018. During that time, Samir sent several emails requesting certain types of insulation in different parts of the home to "minimize noise" between bedrooms and an office and to create "sound deadening" in a planned media room. Samir and Builders discussed the type of installation available for these purposes and which would suit his needs.

In late July, Builders submitted a proposed bid to Samir via email for the insulation services. Another email delivering a revised proposal to Samir explained that

_____

[1] We use Samir Rathod's first names for clarity because he shares the same last name with Darshana Rathod.

3

it was revised with additional options "per our phone conversation." Builders submitted two more revised bids. The last bid was submitted to Samir on August 29, 2018. The email was addressed to both Hallstrom and Samir. The bid listed Hallstrom as the contact. Samir did not object to the bid or ask for more revisions. This final bid stated that payment was due within 30 days of the date of invoice and reserved Builders' "right to recover reasonable attorney's fees and expenses associated with the collection of invoices not paid in full within such 30 day period." Builders began the insulation work days later. No one ever signed the August 29 bid.

Builders began the installation in September 2018. During the installation process, Samir communicated with Builders via text message and phone, concerned that Builders was not installing the insulation to the specifications provided in the bid. Samir provided photos showing the measurements of the spray foam insulation on the ceiling, saying that it was not two inches thick as they had agreed to in the bid and asking Builders to fix it because Builders was not "executing on the bid correctly." Builders arranged to have a crew correct the work to align with the terms in the bid. Builders completed the installation in late September and the insulation was inspected and approved by the City of Mercer Island upon completion. Samir remained unsatisfied with Builders' installation despite the inspection and text messaged Builders that the "[i]nspection doesn't equal doing what's in the agreement. Inspection means you met the minimum city requirements. Two totally different things." Builders sent an invoice directly to Samir in early October for payment of the $29,400 reflected in the final bid. Samir responded by denying liability based on the fact neither he or Hallstrom signed "the contract." Samir wrote in an email, "Jeff [Hallstrom] is not contracted with

me to do anything other than provide advisory services on the home that I am building. There were proposals emailed to me by both Dale and Francisco, but Jeff told me that he did not sign a contract on my behalf, and I didn't sign the contract either . . . my liability (and Jeff's liability) is $0."

Though the only relevant parties to this appeal are the Rathods and Builders, because the challenged attorney fees touch upon the motion to consolidate multiple suits involving eight parties and the denial of the motion to sever, we briefly explain the relationship of the parties and various suits. The Rathods sued two companies for a breach of contract. One that provided custom cabinetry and the other millwork and finishing carpentry services. In a separate action, JHCI sued the Rathods alleging breach of contract, unjust enrichment, quantum meruit, and conversion. The Rathods counterclaimed for unjust enrichment and to claim the surety bond. NORCO Fire Protection, Inc. also sued the Rathods and the Rathods counterclaimed against NORCO and Western Surety Co. In yet another action, Builders sued JHCI, alleging breach of contract and unjust enrichment. JHCI joined and cross claimed against the Rathods. The Rathods counterclaimed only against JHCI for unjust enrichment related to Builders' work. Builders amended their complaint, alleging breach of contract and unjust enrichment against the Rathods.

In January 2021, the court granted the Rathods' motion to consolidate all the cases. Builders later moved to sever, which the Rathods opposed arguing that much of the testimony that related to the claims and cross claims between the Rathods, JHCI and Builders are also applicable to the other consolidated cases. The court denied Builders motion to sever in April 2021.

5

In January 2022, Builders moved for summary judgment asking the court to find that the August 29 final bid was an enforceable contract and to award damages in the amount of the contract, $29,400. The court granted the motion in part and denied in part, finding that there was no genuine issue of material fact as to the existence of an enforceable contract between Builders and the Rathods, but finding that there was genuine issue of material fact as to Builders performance under the contract and the amount the Rathods owed to Builders. Builders sought to resolve the matter via settlement prior to trial without success.

The case proceeded to a bench trial in March 2022. The trial lasted five weeks. Builders ultimately presented one day of testimony during the entirety of the trial. Following trial, the trial court issued findings of fact and conclusions of law. The Rathods do not assign error to any of these court's findings or conclusions. The court found that

> [o]n or about August 29, 2018, the Rathods entered into a contract with Builders to insulate the Home for a price, accounting for selected options and discounts, of $29,400.00. *See* Exh. 709. On February 7, 2022, this Court (Scott, J.) determined that an enforceable contract exists between Builders and Mr. Rathod for the installation of insulation at the Home."

The trial court, in order to "clarify and supplement Judge Scott's order," found that Exhibit 709 is the enforceable contract "regardless of the fact that the contract was not physically signed by the Rathods." This is so, the trial court found, because Samir negotiated directly with Builders, received the contract and did not object, and engaged directly with Builders following the installation. The trial court further found that Builders completed their work and that the Rathods breached their contract with Builders. The

6

trial court entered judgment awarding Builders $29,400 in principal judgment along with the requested attorney fees and costs, yet to be submitted.

Builders subsequently moved for an award of $268,429 in reasonable attorney fees and $15,756.70 in costs under the contract and as a prevailing party. The Rathods objected to the request for attorney fees. The Rathods did not object to costs. They argued the fees were unreasonable because they were more than 10 times the amount of the original bid, and because, among other reasons, having two attorneys attend the trial was duplicative, unnecessary and excessive. Builders, in a footnote in its reply to the objection, asserted that "Builders' two attorneys attempted to keep costs down by having only one appear at times during the trial." The trial court granted Builders' request for attorney fees and costs without any reduction based on "the reasons stated in Builders' briefs in support thereof and incorporated herein." The Rathods moved for reconsideration of the award of attorney fees. The trial court denied the motion. In doing so, the trial court noted that it had provided its reasons by referencing the Builders' briefing, but supplemented the record by entering findings that summarized its reasons for the judgment entered:

> 1. The Rathods were in clear breach of the relevant contract, which included attorney's fees provisions, and clearly failed to pay Builders.
>
> 2. It was uncontroverted that the Rathods moved to consolidate and thus complicate this matter vis-a-vis Builders in Superior Court, while Builders sought to simplify the matter.
>
> 3. It was uncontroverted that Builders sought to resolve this matter prior to trial preparation.
>
> 4. It was uncontroverted that Builders was thus required to attend the entirety of the five-week trial, in part because of the Rathods' scattershot approach to trial testimony presentation.

7

5. Builders appeared to try to limit its costs nonetheless, including by having only one attorney attend trial at a time.

6. Builders costs were reasonable under the Lodestar method.

The Rathods appeal.[2]

DISCUSSION

Summary Judgment

The Rathods contend that the trial court erred in granting in part Builders' motion for summary judgment finding that there was no genuine issue of material fact as to whether there was an enforceable contract between Builders and the Rathods.

We review summary judgments de novo. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). Summary judgment is appropriate when "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Id. (alteration in original) (internal quotation marks omitted) (quoting Rangers Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)); CR 56(c). We must construe all facts and inferences in favor of the nonmoving party. Scrivener v. Clark College, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

The party moving for summary judgment bears the initial burden of showing that

---

[2] The Rathods appealed multiple orders that related to all respondents. The Rathods did not appeal the motion for reconsideration of the award of attorney fees. After the Rathods filed a notice of no intent to file verbatim report of proceedings and narrowed their appeal to review of two issues related only to Builders, Western Surety Co. withdrew its cross appeal and the other respondents filed their concurrence with Builder's arguments and declined to file their own briefs.

there is no disputed issue of material fact. Haley v. Amazon.com Services, LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022) (citing Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989)). The burden then shifts to the nonmoving party to present evidence that an issue of material fact remains. Id. The nonmoving party may accomplish this by setting forth facts and documents that would be admissible as evidence through depositions, answers to interrogatories, and admissions. CR 56(e).

The trial court must construe all evidence and reasonable inferences from that evidence in favor of the nonmoving party. Haley, 25 Wn. App. 2d at 217 (citing Boyd v. Sunflower Props. LLC, 197 Wn. App. 137, 142, 389 P.3d 626 (2016)). The trial court may not weigh the evidence, assess credibility, consider the likelihood that the evidence will be proven true, or otherwise resolve issues of material fact. Id.

An enforceable agreement requires an offer, acceptance, and consideration. Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 389-90, 858 P.2d 245 (1993). For an enforceable contract to exist, there must be mutual assent to its essential terms. Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App. 743, 765, 162 P.3d 1153 (2007). The intent of the parties may be determined from the language of the agreement as well as "'viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc., 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993) (internal quotation marks omitted) (quoting Berg v. Hudesman, 115 Wn.2d 657, 667, 801 P.2d 222 (1998)). Signatures of the parties are not essential to

the determination. Jacob's Meadow Owners Ass'n, 139 Wn. App. at 765 (citing Urban Dev., Inc. v. Evergreen Bldg. Prods., LLC, 114 Wn. App. 639, 651, 59 P.3d 112 (2002)). Unsigned contracts may be enforced without a signature when it is clear from the parties' actions that such a contract existed. Shelcon Const. Grp., LLC v. Haymond, 187 Wn. App. 878, 895, 351 P.3d 895 (2015). "Washington follows an objective manifestation test for contracts, looking to the objective acts or manifestations of the parties rather than the unexpressed subjective intent of any party." Wilson Ct. Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 699, 952 P.2d 590 (1998).

As the moving party, Builders presented extensive evidence of objective acts or manifestations supporting the existence of a contract. Builders provided emails showing that Samir negotiated the terms directly with employees of Builders between June and August 2018. Emails between Samir and Builders show that he requested specific types of insulation in different rooms of the house and discussed the types of insulation to be used and what should be included in the bid with Francisco Cortez. Builders also provided the proposed bids for the project submitted directly to Samir in July and August based on conversations they had with Samir while negotiating the terms. These proposed bids listed Hallstrom as the contact for the project, while the job name was the "Rathod Res / 3-Story" and included the address for Rathod's home on Mercer Island. In a declaration submitted with Builders' motion, Hallstrom stated that he was not involved in the negotiations and that Samir exclusively negotiated the scope and price of the project. Builders provided the "final bid" submitted to Samir on August 29, 2018. The record does not reflect that Samir objected to any terms in the bid or sent a counteroffer. Instead, following this submission of the final bid, Builders began

work days later.

Evidence shows that Builders began and completed installation of the insulation in September 2018. Builders submitted to the court evidence that during installation, Samir communicated with Builders via text message expressing his concerns that the insulation did not meet the specifications outlined in the final bid. On September 28, 2018, Samir text messaged, "Dale – we need to talk. You aren't executing on the bid correctly and I have drywall being nailed Monday morning. Need to meet today or tomorrow and a crew needs to finish by tomorrow." Samir also text messaged, "the work agreement shows fire sprinkler tenting and that was not required by the city, and so it was not done, but is in your bid / quote. So there's a deduction needed for that regardless. We will either settle this between us / between us and your management team, or I'll just see you in court." The August 29 bid included "FIRE SPRINKLING TENTING." When Builders pointed out that the insulation had passed an inspection by the City of Mercer Island, Samir text messaged "[i]nspection doesn't equal doing what's in the agreement."

Builders also submitted transcripts of Samir's deposition taken for this case. The follow exchange took place when Builders' counsel asked Samir about his interactions with Builders.

> [Samir:] The interactions were related to the proposal and the bottom line price of the proposal for what it is I was looking for.
>     From the base proposal that was provided, I wanted to look at options for spray foam insulation, and I wanted to look at putting soundproof insulation in the interior walls so that – you know, I've got children, and I don't want noise carrying through the house.
>
> [Builders:] Do you recall how many proposals you received from Builders' Insulation?

[Samir:]  There were several iterations, and I think some came to me through Jeff and others came directly from a couple of the employees for your client.

[Builders:]  And were you able to review each of those iterations?

[Samir:]  At a high level I reviewed the iterations.  Again, I didn't understand probably half the things on the proposal.

[Builders:] Did you ask questions concerning any of the items included in the proposals?

[Samir:] I don't recall.

[Builders:] Did you ask for any changes to the proposals?

[Samir:] Yes. As I had previously testified to, I asked for the best pricing possible, and I asked for us to get to a scope of a mix of foam and batts in the exterior walls and ceiling.

Samir admitted that he went back and forth with Builders concerning the proposal and explained that "[t]he scope of work, as I understood it, was whatever was in the proposal" and that "we agreed to a number.  That was my role.  Like what am I going to pay you and what are you going to do."  Samir stated, "at some point we got to a final number and at some point a final scope."  Samir recalled "the final bid being 29,400" and that he did not ask for changes after that.  The following exchange took place when Samir was asked during his deposition about his text message exchange with Dale from Builders on September 28:

[Samir:]  . . . There's a lot of reasons why an inspection can pass, and the contract is different from an inspection passing.  There are a lot of things that are optional, such as interior walls being insulated, that have nothing to do with an inspection.

[Builders:] And when you refer to the contract, I assume you're referring to that bid in the amount of $29,400?

[Samir:] I mean if that's considered a contract legally, then yes.  I'm sorry I used the word "contract."  Bid, proposal, whatever it was referred to in this

12

case."

Samir confirmed during the deposition that when he was referring to the fire sprinkler tenting in his September 28 text message with Builders he was referring to the August 29 bid. Samir was asked if "that [was] coming from your review of the agreed upon bid?" Samir answered,

> Correct. At that point I was looking at the bid going did they do everything, did they do it right. So I don't believe that everything that's in that bid ever got completed or may not have been needed.

Through this submitted evidence, Builders' established the parties' actions that, when viewed objectively, manifested the existence of an enforceable contract between Builders and the Rathods.

The burden then shifted to the Rathods, the nonmoving party, to provide evidence showing that a genuine issue of material fact remained. The Rathods failed to do so. The Rathods cite two pages of Samir's declaration without specificity to support their argument that this declaration submitted in opposition to summary judgment created a genuine question of a material fact.

When deciding a motion for summary judgment, the trial court is required to view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. Haley, 25 Wn. App. 2d at 224 (citing Boyd, 197 Wn. App. at 142). The corollary is that "on summary judgment a nonmoving party's declaration must be taken as true" unless inadmissible on other grounds. Id. However, "'when a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear

13

testimony.'" Id. at 227 (alteration in original) (internal quotation marks omitted) (quoting Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 227, 242 P.3d 1 (2010)). For the exception to apply, the subsequent affidavit "must 'directly contradict' the affiant's 'unambiguous sworn testimony' previously given." Id. at 228 (quoting Taylor v. Bell, 185 Wn. App. 270, 294, 340 P.3d 951 (2014)).

Samir does not dispute the contents of the text messages, emails and deposition testimony submitted by Builders. He challenges summary judgment arguing that there was a genuine issue of material fact because he presented evidence that (1) he was merely engaging as an interested homeowner; (2) the August 29 bid does not list the Rathods as a party, and (3) it was JHCI, not himself, that contracted with Builders.

First, Samir submitted copies of communications with Builders as part of his declaration to support his assertion that he was acting as a homeowner and not someone who was managing Builders. But engaging as an interested homeowner does not establish an absence of a contract. And a homeowner certainly can enter into a contract without having to manage the daily operations of the other party.

Second, the Rathods argue that they were not listed as a party on the August 29, 2018 bid.[3] Below, the Rathods argued that the lack of Samir's signature on the bid established he did not enter into a contract. He does not maintain that argument on appeal. Rightly so because signature of parties are not essential to the determination of the existence of a contract. Jacob's Meadow Owners Ass'n, 139 Wn. App. at 765. The August 29 bid does not list anyone as a "party" but does identify the Rathod residence as the job name and location and JHCI as the contact person. This does not overcome

_____

[3]The Rathods describe the bid as the "August 28, 2018 bid" but cite to the August 29, 2018 bid.

Builders' undisputed evidence of Samir's conduct and admissions to establish a genuine issue of material fact.

Lastly, the Rathods appear to contend that because they allege that JHCI entered into a contract with Builders it raises a genuine issue of material fact as to whether the Rathods entered into a contract with Builders. The Rathods argue that because Builders first initiated their action by suing JHCI, it demonstrated that Builders believed it had a contract with JHCI and not the Rathods. Samir asserted in his declaration two key statements supporting this argument. Samir declared, "[u]pon information or belief, JHCI negotiated the final dollar amount, revised the scope, and agreed to proceed with the work." Samir also asserted "[a]t no time did I contract with Builders directly. JHCI contracted with Builders."

Because there may be multiple parties on one side of a contract, White v. Dvorak, 78 Wn. App. 105, 112, 896 P.2d 85 (1995), whether genuine issues of material fact remain as to whether Builders and JHCI entered into a contract is of no matter as to whether the Rathods presented evidence that a genuine issue of material fact remains as to whether the Rathods entered into a contract with Builders. The court that heard the summary judgment motion did not find that the existence of a contract between the Rathods and Builders existed because no contract existed between JHCI and Builders.

More importantly, Samir's assertion that he, at no time, contracted with Builders directly is a legal statement and not a statement of fact. Moreover, his claim that JHCI negotiated the final dollar amount is a direct contradiction of Samir's own unambiguous sworn testimony previously given during his deposition. Samir testified that he communicated with Builders directly regarding the changes he wanted to the proposed

15

bids, that he asked for changes to the initial proposals, and that he went back and forth with them before arriving at a "bottom line price" that Samir was looking for. Samir recalled the final bid being "29,400." He confirmed in his text message exchange with Builders that he was referring to the August 29, 2018 bid to determine if Builders had done everything they had agreed to do. The August 29, 2018 bid totaled $29,400. Samir further explained that "the contract is different from an inspection passing" and that his use of the word "contract" was in reference to the $29,400 bid. Samir said, "if that's considered a contract legally, then yes. I'm sorry I used the word 'contract.' Bid, proposal, whatever it was referred to in this case."

The Rathods cannot create a genuine issue of material fact simply by offering Samir's declaration that merely contradicts, without explanation, his own earlier unambiguous, clearly given deposition.

We conclude that undisputed evidence of objective acts or manifestations of the parties submitted for the summary judgment hearing established the existence of an enforceable contract between the Rathods and Builders, and that Samir's response did not establish a remaining genuine issue of material fact as to this issue. We affirm the summary judgment ruling.[4]

Attorney Fees

The Rathods next challenge the trial court's award of attorney fees to Builders, asserting that it was not a reasonable award of attorney fees.

---

[4] Because we affirm the summary judgment ruling, we need not address Builders' alternative argument that any error at summary judgment did not prejudice the Rathods because they continued to litigate the existence of the contract at trial and the trial court also found the existence of a contract.

The standard of review for an award of costs and attorney fees is a two-step process. Estep v. Hamilton, 148 Wn. App. 246, 259, 201 P.3d 331 (2008). We first review a trial court's legal basis for awarding attorney fees de novo. Cook v. Brateng, 180 Wn. App. 368, 375, 321 P.3d 1255 (2014). Trial courts may award a party attorney fees and costs when authorized by a contract, statute, or a recognized ground in equity. Berryman v. Metcalf, 177 Wn. App. 644, 656, 312 P.3d 745 (2013). If there is authority to award costs and fees, we then review the decision to award those fees and costs under an abuse of discretion standard. Cook, 180 Wn. App. at 375.

The final bid, which the trial court found to be the contract between the Rathods and Builders, states "Builders' Insulation shall have the right to recover reasonable attorney's fees and expenses associated with the collection of invoices not paid in full within [30 days from the date of the invoice]." The Rathods do not challenge that the trial court had authority to award attorney fees.

Washington State calculates the quantity of fees and costs a party is entitled to using the "lodestar" method. Mahler v. Szucs, 135 Wn.2d 398, 433, 957 P.2d 632 (1998). Under this methodology, the party seeking fees bears the burden of demonstrating the fees' reasonableness and must provide contemporaneous records documenting hours worked, describing the work performed, and noting the experience of the attorney who performed it. Mahler, 135 Wn.2d at 433-34. "The court must limit the lodestar to hours reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." Bowers v. Transamerica Title Ins., 100 Wn.2d 581, 597, 675 P.2d 193 (1983).

To support an award of reasonable attorney fees, the trial court is required to create a record adequate to support review, which entails making findings of fact and conclusions of law on the lodestar elements. Mahler v. Szucs, 135 Wn.2d at 433. Though the trial court doesn't require a detailed, "hour-by-hour analysis of each lawyer's time sheets," it generally must provide insight into its exercise of discretion. Taliesen Corp. v. Razore Land Co., 135 Wn. App. 106, 146-47, 144 P.3d 1185 (2006); Steele v. Lundgren, 96 Wn. App. 773, 779-82, 982 P.2d 619 (1999). Failure to make an adequate record will result in remand. Mahler, 135 Wn.2d at 435.

While a "vital" consideration in the lodestar method is the "size of the amount in dispute in relation to the fees requested," this court "will not overturn a large attorney fee award in civil litigation merely because the amount at stake in the case is small." Berryman v. Metcalf, 177 Wn. App. 644, 660, 312 P.3d 745 (2013) (citing Mahler, 135 Wn.2d at 433). The court may award fees in excess of the damages if it is warranted by the facts of the case. Pub. Utils. Dist. 1 of Grays Harbor County v. Crea, 88 Wn. App. 390, P.2d 722 (1997).

Among other arguments made, the Rathods challenged the reasonableness of Builders sending two attorneys to attend a five-week trial when they only presented evidence one day. The trial court initially awarded Builders' attorney fees as requested without any explanation other than incorporating "the reasons stated in Builders' briefs in support thereof." The trial court later, in denying the Rathods' motion for reconsideration, supplemented its reasoning in awarding attorney fees and made findings including that "Builders appeared to try to limit its costs nonetheless, including by having only one attorney attend trial at a time." The Rathods challenge this finding.

Trial was held from March 28, 2022 to May 3, 2022. Builders' attorneys' billing records indicate that both attorneys Thomas Larkin and David Guild II attended every trial day, except for on April 3 when just Larkin attended, and April 14, when just Guild attended. They did not always bill the same number of hours and Guild routinely billed for trial-related work on the same day. Because Guild's hours are not further segregated it is unknown how much time was actually spent attending trial. On appeal, Builders do not assert that only one attorney attended trial, and instead explain that "the entries for the days indicated include time spent doing related trial preparation work." The total amount billed for both attorneys on the days they both attended trial is $77,976. While the record suggests that total amount is not reflective of just trial attendance, it is not an insignificant amount and the trial court based its award of attorney fees, at least, in part on a fact not supported in the record. The trial court abused its discretion in awarding attorney fees for this reason. Because we reverse the award of attorney fees and remand for reconsideration, we need not address the Rathods' other arguments.

<u>Attorney Fees on Appeal</u>

Builders requests fees on appeal under RAP 18.1 and the contract with the Rathods. A party is entitled to an award of attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party on appeal. <u>Hwang v. McMahill</u>, 103 Wn. App. 945, 954, 15 P.3d 172 (2000). Because we reverse the award of attorney fees and remand, we deny Builders' request for attorney fees on appeal.

We affirm the trial court's grant of summary judgment, but reverse the award of attorney fees and remand for reconsideration.

_____ Coburn, J.

WE CONCUR:

_____          _____
Bowman, J                        Dwyer, J.